UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO. 5:08-293-KKC

RONNIE GIST, individually,
and on behalf of others similarly situated,                              PLAINTIFF

v.                                             **OPINION AND ORDER**

PILOT TRAVEL CENTERS, LLC,                                               DEFENDANT

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

This matter is before the Court on the Motion for Class Certification (DE 68) filed by

Plaintiff Ronnie Gist.  Gist brought this putative class action against Defendant Pilot Travel

Centers, LLC, alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"),

15 U.S.C. § 1681c(g).  Gist seeks to represent a class of all natural persons who were provided

with Fleet One credit or debit card receipts from Pilot that did not comply with FACTA.  Pilot

opposes certification.  The parties have fully briefed the matter, and the Court heard oral

argument on May 8, 2013.  For the following reasons, the motion will be denied.

## I.  Facts

Gist is a commercial truck driver from San Antonio, Texas, while Pilot operates retail

locations offering travel-related goods and services. (DE 68-1, Mem. at 4-5).  Pilot is based in

Knoxville, Tennessee, but it has 306 locations throughout the United States and one location in

Canada.  (DE 86-5, Mitchell Steenrod Dep. 30:11-23).  Fleet One, LLC, is an issuer of fleet

cards used by truckers and trucking fleets to purchase diesel fuel and other items at truck stops.

(DE 98, Class Certification Hr'g).  Fleet cards, also called billing services cards, are different

from typical credit cards because not only do they facilitate purchases, they can also be used to

monitor the location, fuel usage, and other key information about individual trucks.  (DE 85-1, Mitchell Steenrod Dep. 8:4-20; DE 85-2 Mitchell Steenrod Decl. at ¶ 4).  Fleet One offers two types of cards, the Over-the-Road Card and the Local Card.  (DE 88, Reply at 4; DE 98, Class Certification Hr'g).

On June 27, 2007, Gist purchased diesel fuel ($400) and obtained a cash advance ($100) from a Pilot Travel Center (store #353) in Georgetown, Kentucky.  (DE 68-1, Mem. at 5; DE 85-3, Gist Dep. 55:9-56:12).  Gist entered the store and paid for the entire transaction by using a Fleet One card.  (DE 85-3, Gist Dep. 101:14-25; DE 18-2, Receipt).  Gist used this card solely for the business purposes of his unregistered sole proprietorship, L & R Gist Logistics.  (DE 85-3, Gist Dep. 148:19-21, 166:11-24).  Gist's transaction resulted in an electronically-generated receipt showing Gist's account number in its entirety.  (DE 18-2, Receipt).  The receipt also shows the transaction as charged to L & R Gist Logistics.  (*Id.*).  This transaction prompted Gist to file his FACTA complaint.  (DE 1).

FACTA requires that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or the transaction."  15 U.S.C. § 1681c(g).  FACTA includes a statutory damages provision, which allows a consumer to recover damages between $100 and $1,000 for each willful violation of FACTA without having to prove actual damages.  15 U.S.C. § 1681n.  In his complaint, Gist did not allege any actual harm to his identity resulting from the claimed violation.   Additionally, when denying Pilot's motion to dismiss, the Court determined that only individuals, not business entities, could bring a claim under the FACTA provision at issue.  (DE 33).

Pilot concedes that there was a period in 2007 and 2008 when the full account numbers of certain cards were shown on receipts.  (DE 68-3, David Dawson Dep. 157:18-158:4).   Prior to May 2007, Pilot truncated, or masked, all but the final four digits of all cards used at its locations.  (*Id.* at 27:1-9).  In May 2007, Pilot received an enhancement from its software vendor which allowed Pilot to manage the way it handled receipts for different types of cards.  (*Id.* at 28:7-13).   Using this enhancement, Pilot changed the way it masked "our corporate cards," which includes fleet cards issued by Fleet One.  (*Id.* at 28:2-29:4).  This change did not apply to cards such as Visa, American Express, MasterCard, or Discover.  (*Id.*)

According to David Dawson, Pilot's supervisor of quality assurance and integration, the change reflected the different way Pilot handled what he called "corporate transactions," those involving fleet cards, and "consumer transactions," those involving a typical credit or debit card.  (*Id.* at 31:7-34:24).   Because transactions involving fleet cards go through a two-step authorization process, a billing company may decline the transaction after fuel has been dispensed at the pump. (DE 68-3, Dawson Dep. 33:1-24).  When a transaction is declined, or "fails," a Pilot cashier must try and complete it by securing the funding.  (*Id.*).  Cashiers can do this by calling the billing company to get a "voice auth," but to receive this authorization, the cashier must provide the account number to the billing company.  (*Id.*).  To help address failed transactions efficiently, Pilot wanted the full account number shown for these "corporate transactions."  (*Id.*)

Dawson explained that Pilot distinguished fleet cards from "consumer cards" because a person using a fleet card needs more than the account number to use the card, so Pilot saw "very little risk of fraud."  (*Id.* at 33:21-34:14).  Upon swiping a fleet card, the holder must provide certain inputs, such as a driver or trip identification number or an odometer reading, and

3

"[w]ithout that information, you can't use the card." (*Id.* at 34:1-9).  By June 2007, Pilot had fully implemented the unmasking practice, thus affecting receipts generated from fleet card transactions, including any issued by Fleet One.  (*Id.* at 35:24-36:24).  Receipts from these transactions would be generated inside Pilot locations at the register; transactions that occurred solely at one of Pilot's diesel fuel pumps never produced a receipt.  (DE 85-1, Steenrod Dep. 21:15-22:6).    In other words, the only times receipts would be generated from fleet card transactions would be when a customer entered the store to purchase something there or when a customer decided to go inside to request a receipt.  (DE 88-1, Myron Lewis Dep. 29:3-10).

Pilot, however, soon reversed course and resumed masking the account numbers of fleet cards by September 2007.  (DE 68-3, Dawson Dep. at 38-40).  According to Dawson, concerns that FACTA might apply to these "corporate transactions" prompted the change in policy "just to be on the safe side of things." (*Id.* at 39:4-10).  Despite the return to the policy of masking the numbers, Pilot admits that a software "bug" continued to affect "a very small portion" of fleet card receipts until the issue was fixed by the end of 2008.  (*Id.* at 39:19-40:13).  As a result, it remained possible for certain transactions in certain locations to generate receipts showing the full account number.

Discovery has proved difficult since Gist filed this case in 2008, specifically Gist's attempts to identify class members.  As part of this effort, in June 2010, Gist served Fleet One with a subpoena *duces tecum* to depose one of Fleet One's corporate representatives and to obtain documents relevant to class certification, especially class member identification.  Because Pilot is a direct competitor in the fleet card industry, Fleet One objected to turning over its customers' information.  Gist then initiated enforcement proceedings in the United States District Court for the Middle District of Tennessee.  (DE 69-2, *Gist v. Pilot Travel Centers, LLC*, No.

3:10-mc-00095, 2011 WL 4055788 (M.D. Tenn., Sept. 12, 2011) ("Memorandum and Order")).

Gist's subpoena sought Fleet One's records relating to transactions at the same Pilot location

visited by Gist.  (DE 69-2, Memorandum and Order at 4).  The request was limited to a six-day

period that included the day of Gist's visit.  (*Id.*).   Judge Aleta A. Trauger explained the results

of Fleet One's research:

> Fleet One's research into its records has shown that, of the "over 400 transactions
> at the Pilot location during the 6-day period specified in the subpoena," only 11
> transactions were carried out by (9) customers who were not "corporate entities"
> and, therefore, are viable class members.  And, again, "plaintiff would not be able
> to tell whether Pilot delivered a receipt to the customer in any transactions," let
> alone what information the receipt contained.

(*Id.*) (quoting from Fleet One's pleadings).  In a footnote, Judge Trauger suggested that "[t]he

best this discovery could provide, then, would be a 'list of fleet companies' for the plaintiff to

'comb through to find consumers so he can contact them and determine whether they received a

[problematic] receipt.'" (*Id.*) (alteration in original).

Fleet One determined the "corporate" status of the customers by checking the credit

application associated with each account and then retrieving transaction information only for sole

proprietorships and partnerships.  (DE 68-4, Glen Sanginario Decl. at ¶ 2).  This entire process

took eight hours.  (*Id.*)  Fleet One "possesses the ability to run similar queries for all Pilot Travel

Centers that use Fleet One, LLC cards for any dates specified" provided that information is in its

database.  (DE 68-4, Sanginario Decl. ¶ 3).  Typically, Fleet One's database does not have

information that is more than 18 months old.  (*Id.*).  Older information is on backup tapes, which

requires a different retrieval process. (*Id.*).  Ultimately, Judge Trauger granted Gist's motion to

compel production of the records related to the eleven "non-corporate" transactions and to

compel the deposition of Fleet One's corporate representative.  (DE 69-2, Memorandum and

Order at 4-5).  Eventually, on May 15, 2012, Gist agreed to accept a sworn declaration in lieu of a deposition.  (DE 69, Status Report at 3).

To date, Gist has not identified any other class members, but using the Fleet One transaction documents, he claims to have identified three transactions with the characteristics necessary to produce a problematic receipt.  The Fleet One transaction documents disclose the time, date, account number, card number, the account holder's name, and a code indicating whether the purchase occurred inside the store or outside at the pump.  (DE 68-1, Mem. at 5-6; DE 98, Class Certification H'rg).  Based on the testimony above, Gist concludes that three of the eleven "non-corporate" transactions identified by Fleet One would have generated a receipt that violated FACTA.  One of these three transactions is the one charged to the account of L & R Gist Logistics on June 27, 2007.  (DE 68-4, Sanginario Decl. at 11).

The issue currently before the Court is whether Gist should be able to bring this action as a class action.  Gist seeks to represent a class consisting of:

> All natural persons in the United States to whom, on or after May 1, 2007, and continuing through the resolution of this case, the Defendant provided an electronically printed receipt in connection with a Fleet One credit or debit card transaction and the receipt contained more than the last five digits of the consumer's credit card number.

(DE 68, Plaintiff's Motion for Class Certification at 1).  Based on the three transactions discussed above, Gist estimates that the class would contain at least 2,000 members.  (DE 98, Class Certification Hr'g.).

## II. Standard for Class Certification

It is important to begin by noting that a class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–

701 (1979)).  Federal Rule of Civil Procedure 23 controls this exception, and "[a] party seeking class certification must affirmatively demonstrate his compliance" with Rule 23.  *Dukes*, 131 S.Ct. at 2551.  Under Rule 23, "[a] class action may be maintained if two conditions are met: The suit must satisfy the criteria set forth in subdivision (a) (*i.e.,* numerosity, commonality, typicality, and adequacy of representation), and it also must fit into one of the three categories described in subdivision (b)."  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 130 S.Ct. 1431, 1437 (2010) (internal quotation marks omitted).

Certification is proper only after a district court performs a "rigorous analysis" to ensure the class meets the requirements of Rule 23.  *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982); *Reeb v. Ohio Dep't of Rehab. & Corr.,* 435 F.3d 639, 644 (6th Cir. 2006).   The district court has broad discretion in determining whether to certify a class, but that discretion must be exercised within the framework of Rule 23.  *In re American Medical Sys., Inc.,* 75 F.3d 1069, 1078-79 (6th Cir. 1996).  A party seeking to certify a class bears the burden of establishing that certification is proper.  *Id.* at 1079.  Because Rule 23 "does not set forth a mere pleading standard," a party "must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S.Ct. at 2551 (emphasis in original).  "The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

Pilot does not dispute that, during the period alleged, it chose to generate receipts displaying more than the final five digits of fleet cards used at its retail locations.  Rather, Pilot opposes class certification on other grounds.  Pilot contends that the proposed class is not ascertainable or numerous, that Gist is not a typical and adequate representative, that common

issues do not predominate over individual ones, and that the class treatment is not a superior, manageable method of adjudication for the claims asserted.

### III. Analysis

#### A. Class Definition

"Before a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (citing 5 James W. Moore et al., *Moore's Federal Practice* § 23.21[1] (Matthew Bender 3d ed. 1997)).  The need to conduct substantial review of a large number of files to identify members is not a reason to deny class certification.  *Young*, 693 F.3d at 539-540 (certifying class despite need to manually review defendant's insurance files, assisted by geocoding software, in order to identify subclass members).  A class definition should be based on objective criteria so that class members may be identified without individualized fact finding.  *Id.*

Gist and Pilot dispute whether this proposed class is ascertainable.  Specifically, they dispute whether individualized inquiries are necessary to identify potential members of this class.  Pilot does not possess information sufficient to allow identification of any member of this proposed class.  Pilot does not maintain records that would reflect the names or addresses of individual customers who made purchases with a credit or debit card at a Pilot Travel Center.  (DE 85-2, Steenrod Decl. at ¶ 11).  Pilot does not have records reflecting whether a receipt was printed for a given transaction, what was printed on a receipt, or if that receipt was given to the customer.  (*Id.*).

Gist asserts that Fleet One transaction records can be used to determine class membership. These records show the type of fuel purchased (gasoline or diesel) and whether cash or products were also purchased inside the store. Gist argues that, based on the deposition testimony of Dawson, receipts associated with all Fleet One cards displayed more than five digits from May through September 2007. Additionally, Gist asserts that from September 2007 through December 2008, the full account numbers of all Fleet One cards were displayed on receipts printed at cash registers. Examining the Fleet records, Gist argues, he can determine whether a receipt was provided to a customer (*i.e.* in-store purchases mean a receipt was at least available). Gist, however, does admit that there must be some cross-reference to Pilot's records to compare the Fleet One card data of each transaction with the unmasking and remasking implementation schedules of specific Pilot Travel Centers across the country. Finally, Gist argues that a review of the Fleet One credit application connected to each transaction can determine the legal status of the card applicant and so ensure only those who bear the risk of Pilot's FACTA non-compliance, *i.e.* consumers, are included in the class. Gist has not provided these records. Also, it is not clear whether Gist's and Fleet One's method separates business entities from individual consumers.

Based upon these deductions, Gist argues that of the eleven transactions Fleet One identified at the Pilot Travel Center in Georgetown, Kentucky, during late June 2008, three likely violated FACTA. Despite the heavy burden Gist proposes placing on a non-party, Fleet One's records do not provide clear answers about potential class members. Fleet One's records do not show whether a receipt was printed or not. (DE 68-4, Sanginario Decl. at ¶ 2; DE 69-2, Memorandum and Order at 4). Fleet One's records do not show what information would have been on a particular receipt. (*Id.*). These records do not eliminate the need for individualized

9

fact-finding; instead, each transaction record invites questions.  Because individualized fact-finding would be required to determine the holder of the card, that holder's possible consumer status, and whether he or she was "provided" a receipt, Gist has not demonstrated that there is an ascertainable class.

District courts facing similar FACTA cases have concluded that ascertainability issues prevented class certification.  In *Hammer v. JP's Southwestern Foods*, LLC, a district initially certified a class but later decided the class should be decertified given the individual inquiries required for each of the 45,000 credit card receipts involved in the case.  No. 08-cv-339-FJG, Dkt. No. 330 at 2 (W.D. Mo. July 24, 2012).  The receipts in that case did not show who was entitled to recover damages, and the court concluded that using claim forms would be "unwieldy" and a "tragic waste of resources."  *Id.*  (quoting *Rowden v. Pac. Parking Sys.*, No. 11-001190, 2012 WL 2552694 (C.D. Cal. July 2, 2012)).  Based on those ascertainability and manageability issues, the superiority of individual litigation, and the overall lack of commonality, the court decertified.  *Id.* at 2-3.

In another FACTA case, a district court also relied on the difficulty in ascertaining class members when refusing to certify a proposed class of movie ticket purchasers.  *Grimes v. Rave Motion Pictures Birmingham, L.L.C.*, 264 F.R.D. 659, 665 (N.D. Ala. 2010).  As that court explained:

> Grimes's putative class can never be ascertained without first conducting an individualized inquiry into the merits of each putative class member's claim. Rave does not maintain, nor has it ever maintained, a database or any paper record that preserves information sufficient to allow identification of any member of this proposed class. For very understandable security reasons. Rave does not retain credit card numbers in its files. Copies of receipts are not generated by Rave's point of sale software. The original receipts themselves are, of course, given to the customer.

> On these thus far undisputed facts, there is no way to determine who was or was not issued a FACTA non-compliant receipt by Rave, except for those issued to Grimes, or to unknown and virtually unknowable persons who may have received and for some reason preserved them.

*Id.*

Similar ascertainability issues are present here. Gist argues that a review of Fleet One files, relevant credit applications, and Pilot's software updating schedules can provide the identity of class members. Even if this burdensome task were undertaken, it would not determine class membership. It is not the time or the cost of this manual review process that creates issues. It is that individualized inquiries would still remain as to each Fleet One transaction. Gist has not provided a feasible way to determine who is or who is not within the class without such inquiries.

### B.  Rule 23(b)(3)

Not only Gist has failed to show the proposed class is ascertainable, he also cannot satisfy at least one of the provisions of Rule 23(b). *Comcast Corp.,* 133 S. Ct. at 1432. Gist seeks certification as a Rule 23(b)(3) class, which requires meeting additional procedural safeguards. Such a class may be maintained if the Court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and the class action, as a procedural mechanism, is superior to other methods of adjudicating the claims. Fed. R. Civ. P. 23(b)(3); *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 565 (6th Cir. 2007).

### 1.  Predominance

"To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof."

*Beattie*, 511 F.3d at 564 (quotation marks and citations omitted). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 632 (1997).

Gist alleges that Pilot violated FACTA by printing non-truncated receipts after transactions involving Fleet One cards. The claims of Gist and the proposed class require answering at least two broad questions: (1) whether Pilot's business practices amount to willful violations of FACTA, and (2) whether the Fleet One cards at issue meet the statutory definition for a credit or debit card. Because Gist and the proposed class seek only statutory damages, there will be no individualized inquiry into damages.

The issue of "willfulness" cannot be determined by evidence applicable to the class as a whole. That is because Pilot's technology varied during the class period, throughout the country, and over different point-of-sale devices. (DE 85-1, Steenrod Dep. 18:8-8-24; 31:5-32:10). Also, as discussed above, software "bugs" were the stated reason for some problematic transactions at some stores at some points during the class period. (DE 68-3, Dawson Dep. 39:15-41:1). Because of the software at issue, therefore, determining whether Pilot willfully violated FACTA would require considering individualized proof for each transaction: how was the purchase made, where was it made, and when was it made. Similarly, for each transaction, there would be individual questions about the nature of the cardholder and whether the receipt was "provided" to a consumer. *See Todd v. Target Corp.*, No. 10-CV-05598, 2012 WL 1080355, at \*2 (N.D. Ill. Mar. 30, 2012) (discussing FACTA and explaining that "there is not much quarrel: if a merchant prints a merchant copy with the banned information but retains the document, then the merchant has not 'provided' a receipt to the cardholder at the point of sale (or at all)."). As a result, the Court cannot find that common questions predominate over individual ones.

### 2.  Superiority

One factor to consider in determining whether the superiority requirement of Rule 23(b)(3) is satisfied are "the difficulties likely to be encountered in the management of a class action."  Fed. R. Civ. P. 23(b)(3).

Notably, a district court denied certification of a similar FACTA case due, in part, to manageability concerns.  *Frobos v. Pilot Travel Centers, LLC*, No. 2:10-cv-01097-NKL (W.D. Mo. Oct. 20, 2011).  That case also involved Pilot but concerned cards issued by a billing services provider other than Fleet One, so there was no overlap between that class and the one proposed by Gist.  In *Frobos*, the court denied certification and stated:

> Plaintiff has not identified sufficiently analogous case law to address the Court's manageability concerns … Plaintiff has still not shown how he would be able to identify class members, nor how each class member would be able to prove his membership in the class or the merits of his claim without holding resource-intensive individualized inquiries.  Thus the Court finds that the difficulties in managing a class action in the present class would be too great.

*Frobos*, No. 2:10-cv-01097-NKL, Dkt. No. 45 (W.D. Mo. Oct. 20, 2011).  The same concerns about manageability are present here.  There are the overall issues with identifying class members, and "[g]iven the necessary number of individual inquiries, a class action cannot be a superior form of adjudication."  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 631 (6th Cir. 2011) *cert. denied*, 132 S. Ct. 1757 (2012). There is also the concern about the burden placed on Fleet One, who is not a party to this action, and the manageability of its role.

When analyzing the superiority requirement, the Sixth Circuit has noted that a "small possible recovery would not encourage individuals to bring suit, thereby making a class action a superior mechanism[.]"  *Beattie*, 511 F.3d at 567.  Under FACTA, an individual's recovery

could be small.  At the same time, FACTA does provide plaintiffs with both costs and reasonable attorney fees in a successful action.  This statutory right to recover fees makes individual suits a more adequate alternative.  *See Young v. Trailwood Lakes*, 61 F.R.D. 666, 668 (E.D. Ky. 1974) (discussing Consumer Credit Protection Act).  In light of the manageability concerns and the need for individualized inquiries, as well as the availability of statutory fees, the Court finds that a class action is not a superior method for adjudicating this dispute.

## IV.  Conclusion

As discussed herein, Gist has not affirmatively demonstrated his compliance with Rule 23.   In view of the Court's conclusions that the proposed class is not ascertainable and fails to satisfy the predominance and superiority requirements of Rule 23(b)(3), the Court need not address whether Gist satisfied the remaining Rule 23(a) criteria for class certification. Accordingly, IT IS HEREBY ORDERED as follows:

(1) Gist's Motion for Certification (68) is DENIED; and

(2) Within twenty-one (21 days) from the date of this Order, the parties SHALL FILE a joint status report proposing mutually convenient dates for the Case Management Conference they requested  in their Report of Parties' Planning Meeting (DE 37).

This 12th day of August, 2013.



Signed By:

*Karen K. Caldwell*

United States District Judge